IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL ZENQUIS,** | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 11-1941 |
| | : | |
| **CITY OF PHILADELPHIA; DETECTIVE BLOWES,** Badge No. 9107; **OFFICER JOSEPH CONARD,** Badge No. 1355; **OFFICER KATHLEEN DENOFA,** Badge No. 4024; **DETECTIVE FRANCIS DRAGON,** Badge No. 845; **DETECTIVE ENRIQUEZ,** Badge No. 9248; **DETECTIVE KEVIN GAGE,** Badge No. 821; **OFFICER JOSE LATORRE,** Badge No. 5045; **OFFICER LEE,** Badge No. Unknown; **DETECTIVE PETER MARCELLINO,** Badge No. 826; **LIEUTENANT THOMAS MCDEVITT,** Badge No. 288; **DETECTIVE JAMES MILES,** Badge No. 8060; **OFFICER MILLER,** Badge No. 4621; **DETECTIVE DANIEL O'MALLEY,** Badge No. 695; **OFFICER RAYMOND SINGLETON,** Badge No. 5014; **OFFICER TINA WALSH,** Badge No. 4940; **OFFICER BRIAN WILLIAMS,** Badge No. 4793; **OFFICER MIQUON WILSON,** Badge No. 1490; and **OFFICER JOHN DOE(S),** | : : : : : : : : : : : : : : : : : : : : | **JURY TRIAL DEMANDED** |
| Defendants. | : : | |

## AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1.      This is a civil rights action concerning the shocking conduct of Philadelphia police officers who encouraged civilians to engage in vigilante justice in seeking out and detaining a man based on unsubstantiated allegations that he brutally raped an eleven-year-old

girl in the Kensington section of the City. Plaintiff Michael Zenquis had nothing to do with the rape. Based on a non-specific and erroneous citizen tip, however, investigating police officers, with the approval and ratification of supervising officers at the highest ranks of the Philadelphia Police Department, informed angered civilians in Kensington that Mr. Zenquis had committed the rape and made clear to those civilians that they should search for Mr. Zenquis, detain him, and mete out their own form of "street justice."

    2.    As a result of the officers' actions and within hours of the officers publicly identifying Mr. Zenquis as the rapist, a group of more than five civilians violently assaulted Mr. Zenquis causing him serious physical injuries.

    3.    Philadelphia police officers arrived on the scene and, without probable cause or other lawful grounds, arrested Mr. Zenquis. After officers conducted a short investigation, Mr. Zenquis was cleared of any responsibility for the rape and was released.

    4.    The actions of Philadelphia police officers in instructing and encouraging civilians to detain, assault and injure plaintiff caused blatant violations of Mr. Zenquis's right to be free from unlawful arrest and the unreasonable use of force under the Fourth and Fourteenth Amendments to the U.S. Constitution and Mr. Zenquis's substantive due process rights under the Fourteenth Amendment to the U.S. Constitution. Mr. Zenquis brings this action under 42 U.S.C. § 1983 to seek redress for the violations of his rights and the damages he suffered.

## JURISDICTION

    5.    This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

## PARTIES

6. Plaintiff Michael Zenquis, age 28, is and was at all times relevant to this Complaint a resident of Philadelphia, Pennsylvania.

7. Defendant City of Philadelphia is a municipality in the Commonwealth of Pennsylvania and owns, operates, manages, directs and controls the Philadelphia Police Department, which employs the individual defendants identified below.

8. The following individual defendants were at all relevant times employed as officers in the Philadelphia Police Department: Detective Blowes, Badge No. 9107; Officer Joseph Conard, Badge No. 1355; Officer Kathleen Denofa, Badge No. 4024; Detective Francis Dragon, Badge No. 845; Detective Enriquez, Badge No. 9248; Detective Kevin Gage, Badge No. 821; Officer Jose Latorre, Badge No. 5045; Officer Lee, Badge No. Unknown; Detective Peter Marcellino, Badge No. 826; Lieutenant Thomas McDevitt, Badge No. 288; Detective James Miles, Badge No. 8060; Officer Miller, Badge No. 4621; Detective Daniel O'Malley, Badge No. 695; Officer Raymond Singleton, Badge No. 5014; Officer Tina Walsh, Badge No. 4940; Officer Brian Williams, Badge No. 4793; Officer Miquon Wilson, Badge No. 1490; and Officer John Doe(s). Each of these defendants is sued in his or her individual capacity.

9. At all times relevant to this Complaint, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to plaintiff.

10. At all times relevant to this Complaint, all defendants acted under color of state law.

## FACTUAL ALLEGATIONS

11. On the morning of June 1, 2009, an eleven-year-old girl was walking on Kensington Avenue in the Kensington section of Philadelphia when a man abducted her and took

her to a secluded location. The man proceeded to violently rape the girl. After the rape, he left the girl at the scene and fled.

12. The girl was hospitalized for injuries sustained during the rape. Her injuries required surgical treatment.

13. Media reports of the rape spread quickly, and, within hours of the attack, many residents of Kensington were aware of the incident.

14. Philadelphia police officers commenced an intense investigation working in several teams throughout the Kensington neighborhood to advise residents of the incident and seek tips as to who may have been responsible for the rape. The officers engaged in these activities were assigned to the Philadelphia Police Department's Special Victims Unit and various police districts in the geographical area of the rape, and included the following defendants: Blowes, Conard, Denofa, Dragon, Enriquez, Gage, Latorre, Lee, Marcellino, McDevitt, Miles, Miller, O'Malley, Singleton, Walsh, Williams, Wilson and Doe(s) (hereinafter referred to collectively as "individual defendants").

15. Various individual defendants, including defendants Denofa, Dragon, Gage, McDevitt, Miller, O'Malley and Walsh, received an unsubstantiated "tip" that a man known by the name, "Romeo," may have been involved in the rape. This "tip" was documented in police paperwork and investigation notes along with the names of the referenced officers.

16. Plaintiff Michael Zenquis, who was known in Kensington for his singing voice, was often called by the nickname, "Romeo."

17. Plaintiff did not commit the rape, nor was he in the Kensington area when the rape occurred.

18. Upon receiving the tip, the individual defendants, despite the unsubstantiated nature of the tip, began advising civilians in the Kensington area that plaintiff had in fact committed the rape.

19. To the extent any of the individual defendants did not personally inform civilians in the Kensington area that plaintiff had in fact committed the rape, those defendants acted in concert and conspiracy with all other defendants to inform civilians that plaintiff had in fact committed the rape and/or failed to intervene to prevent their fellow officers from providing such information to civilians.

20. The individual defendants acted in this fashion despite failing to conduct a reasonable investigation to determine whether there were lawful grounds to believe that plaintiff had in fact committed the rape.

21. Over the course of several hours, the individual defendants distributed a photograph of plaintiff to civilians and advised the civilians that they should detain plaintiff.

22. Further, the individual defendants, knowing or having reason to know that civilians are not trained in the proper use of physical force in the context of an arrest, specifically advised the civilians that they should use physical force against plaintiff.

23. To the extent any of the individual defendants did not personally distribute a photograph to civilians, advise civilians to detain plaintiff and/or advise civilians to use physical force against plaintiff, those defendants acted in concert and conspiracy with all other defendants to do so and/or failed to intervene to prevent their fellow officers from carrying out these actions.

24. The civilians who spoke with the individual defendants and obtained plaintiff's photograph from the officers received the clear message from the officers that they would be free to assault plaintiff with impunity.

25. On the afternoon of June 1, 2009, plaintiff was walking in the area of Argyle and Ontario Streets in Kensington when he was summoned by a man whom he knew from the neighborhood.

26. Plaintiff followed the man onto Argyle Street where he was approached by two men whom he knew by the names "Miguel" and "D."

27. Without warning, "Miguel" struck plaintiff in the left eye with a piece of lumber.

28. The three men – the man who summoned plaintiff and the men known to plaintiff as "Miguel" and "D" – then threw plaintiff to the ground and physically assaulted him.

29. Several other civilians joined the assault and continued to beat plaintiff with improvised weapons as well as with punches and kicks. During the course of the assault, plaintiff was struck with, among other things, sticks, pieces of lumber, and a baseball bat.

30. As the civilians were assaulting plaintiff, plaintiff heard a woman yelling that he was a "rapist."

31. Plaintiff yelled that he was innocent and had done nothing wrong, but the civilians continued to assault him.

32. The civilians who assaulted plaintiff had spoken to at least one or more of the individual defendants, and were told, as described above, that they should detain plaintiff and that they would be permitted to use force against plaintiff.

33. The assault ended when one or more of the individual defendants, including defendant Singleton, arrived on the scene. The officers on the scene placed plaintiff under arrest.

34. The individual defendants on the scene of the assault of plaintiff conducted no investigation regarding the assault of plaintiff; they did not speak to any witnesses or investigate any of the persons present at the scene.

35. After the individual defendants placed plaintiff under arrest, they transported plaintiff to a hospital for treatment of the multiple physical injuries he sustained during the assault, including serious bruising to his face, back, and foot, and lacerations to his ankle and elbow.

36. When plaintiff was released from the hospital to the custody of police, officers took him to the Special Victims Unit of the Philadelphia Police Department.

37. Plaintiff was interviewed at the Special Victims Unit by one or more of the individual defendants, including, in particular, defendant Marcellino. Throughout the interviews, plaintiff protested his innocence. Additionally, plaintiff voluntarily gave a biological sample for DNA testing.

38. After a brief investigation, including the DNA testing on plaintiff's biological material, the individual defendants, including, in particular, defendant Marcellino, confirmed that plaintiff was indeed innocent, and plaintiff was released from police custody.

39. On the morning of June 2, 2009, plaintiff provided a statement to one or more of the individual defendants, including, in particular, defendant Miles, concerning the civilians who assaulted him. Upon information and belief, defendant Miles had been aware of the circumstances of the assault of plaintiff shortly after the time of the assault but conducted no investigation of the assault until plaintiff contacted him for the specific purpose of providing a statement.

40. During an interview, plaintiff was able to identify photographs of the individuals whom he knew as "Miguel" and "D."

41. After plaintiff's release from custody, Philadelphia police officers continued their investigation of the rape that occurred on June 1, 2009.

42. Notwithstanding their knowledge as to the assault of plaintiff, at no time after the assault of plaintiff did police officials make efforts to prevent civilians from assaulting individuals identified as suspects in the rape.

43. As of June 2, 2009, police developed information that caused them to suspect that a man named Jose Carrasquillo had committed the rape.

44. Similar to their actions with regard to plaintiff, investigating officers, including, in particular, defendant Lee, advised civilians in the Kensington area that Carrasquillo had committed the rape and made clear to the civilians that they would be permitted to use physical force against Carrasquillo.

45. On the afternoon of June 2, 2009, civilians who had received information from investigating police officers observed Carrasquillo walking in Kensington. The civilians chased Carrasquillo and violently assaulted him, using, as with the assault of plaintiff, improvised weapons such as a piece of lumber. The assault, which was captured on a video surveillance camera, caused Carrasquillo serious injuries.

46. Police arrived on the scene and took Carrasquillo into custody. After further investigation, including DNA testing, Carrasquillo was charged with committing the rape.

47. Carrasquillo later pled guilty to committing the rape, and he received a sentence of 30-to-60 years incarceration.

48. In the days following the assault of Carrasquillo, policymakers for the City of Philadelphia made public statements demonstrating the City's policy and practice of tolerating and/or ratifying the encouragement of civilians acting as vigilantes as in the assaults of plaintiff and Carrasquillo.

49. Philadelphia Mayor Michael A. Nutter stated in a media interview that the actions of the civilians were "a further demonstration that Philadelphians care passionately about the city, about our quality of life, and certainly about our children."

50. Philadelphia Police Commissioner Charles Ramsey stated that "members of the community were very upset over this, and some may have used more force than a trained police officer."

51. Commissioner Ramsey stated, further, that the individuals who assaulted Carrasquillo would not be charged criminally in relation to the assault.

52. After Commissioner Ramsey's statements confirming that there would be no prosecution in the Carrasquillo assault, two of the civilians who were known to have participated in the assault received an $11,000 cash award at a public ceremony.

53. On June 8, 2010, only after police had confirmed that Carrasquillo had committed the rape and only after Commissioner Ramsey had publicly announced that the individuals who had assaulted Carrasquillo would not be charged criminally, police sought arrest warrants for two of the people identified by plaintiff as having participated in the assault of plaintiff.

54. Charges as to one of the individuals who assaulted plaintiff were dismissed. The other individual entered a negotiated guilty plea for a reduced sentence.

55. At no time did plaintiff commit any offense in violation of the laws of the City of Philadelphia, the Commonwealth of Pennsylvania, or the United States.

56. There was no legal cause to justify the stop, detention, and/or arrest of plaintiff.

57. By falsely informing civilians that plaintiff had in fact been found to have committed a rape and by encouraging civilians to detain and use force against plaintiff, the individual defendants conspired with and aided and abetted civilians in order to cause the

9

unlawful detention of plaintiff and the use of unlawful force against plaintiff in violation of plaintiff's rights under the U.S. Constitution and federal law.

58. As the civilians referenced above were acting in concert and conspiracy with Philadelphia police officers, the civilians were state actors within the meaning of 42 U.S.C. § 1983.

59. There was no legal cause to justify the use of force against plaintiff, and the force used against plaintiff was unreasonable and excessive.

60. The conduct of all defendants resulted in a state-created danger to plaintiff as the harm caused to plaintiff was foreseeable and fairly direct, defendants acted in willful disregard for the safety of plaintiff, defendants' actions created a relationship between the state and plaintiff, and defendants used their authority to create an opportunity that otherwise would not have existed for the civilians' actions in assaulting plaintiff to occur.

61. At all times relevant to this Complaint, the conduct of all defendants was shocking to the conscience.

62. At all times relevant to this Complaint, defendants acted with deliberate indifference to plaintiff's rights under the U.S. Constitution and federal law and to the foreseeable harms to plaintiff resulting from defendants' conduct.

63. At all times relevant to this Complaint, the conduct of the individual defendants was in willful, reckless and callous disregard of plaintiff's rights under federal and state law.

64. As a direct and proximate result of the conduct of all defendants, plaintiff suffered substantial damages, including physical injuries as described above, emotional distress and trauma, loss of the enjoyment of life, and financial losses, some or all of which may be permanent.

## CAUSES OF ACTION

### Count I
### Plaintiff v. Defendants Blowes, Conard, Denofa, Dragon, Enriquez, Gage, Latorre, Lee, Marcellino, McDevitt, Miles, Miller, O'Malley, Singleton, Walsh, Williams, Wilson, and Doe(s)
### Federal Constitutional Claims

65. The actions of defendants Blowes, Conard, Denofa, Dragon, Enriquez, Gage, Latorre, Lee, Marcellino, McDevitt, Miles, Miller, O'Malley, Singleton, Walsh, Williams, Wilson, and Doe(s), in conspiracy with and aiding and abetting civilians, violated plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unlawful stop, detention and/or arrest and the unlawful use of force.

66. The actions of defendants Blowes, Conard, Denofa, Dragon, Enriquez, Gage, Latorre, Lee, Marcellino, McDevitt, Miles, Miller, O'Malley, Singleton, Walsh, Williams, Wilson, and Doe(s) resulted in a state-created danger and violated plaintiff's right to due process of law under the Fourteenth Amendment to the United States Constitution.

### Count II
### Plaintiff v. Defendant City of Philadelphia
### Federal Constitutional Claims

67. The violations of plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, plaintiff's damages, and/or the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of defendant City of Philadelphia, which has encouraged, tolerated, ratified and has been deliberately indifferent to the following policies, patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

a. Police officers' encouragement of civilians to detain and use force against persons identified by police as responsible for criminal acts as in the circumstances of this case;

b. Legal cause to stop, detain, and/or arrest a citizen;

c. The use of force during the course of a stop, detention, or arrest;

d. The proper exercise of police powers, including but not limited to the encouragement of civilians to stop and use force against other civilians;

e. The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

f. The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;

g. Police officers' use of their status as police officers to employ the use of force or to achieve ends not reasonably related to their police duties;

h. The failure of police officers to follow established policies, procedures, directives and instructions regarding investigation of persons identified in a citizen tip as a person who possibly committed a crime under such circumstances as presented by this case;

i. The failure of police officers to follow established policies, procedures, directives and instructions regarding the identification and detention of persons suspected of committing a crime under such circumstances as presented by this case;

j.  Using encounters with the public to obtain information related to a criminal investigation and using the public to assist in conducting a criminal investigation;

k.  The hiring and retention of officers who are unqualified for their employment position; and

l.  The failure to properly sanction or discipline officers who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other Philadelphia police officers.

**Count III**
**Plaintiff v. Defendants Blowes, Conard, Denofa, Dragon, Enriquez, Gage,**
**Latorre, Lee, Marcellino, McDevitt, Miles, Miller,**
**O'Malley, Singleton, Walsh, Williams, Wilson, and Doe(s)**
**State Law Claims**

68. The actions of defendants Blowes, Conard, Denofa, Dragon, Enriquez, Gage, Latorre, Lee, Marcellino, McDevitt, Miles, Miller, O'Malley, Singleton, Walsh, Williams, Wilson, and Doe(s) constitute the torts of assault, battery, violation of the common law duty to protect, reckless disregard of safety and civil conspiracy under the laws of the Commonwealth of Pennsylvania.

Case 2:11-cv-00944-LRB Document 1-5 Filed 07/08/11 Page 13 of 14

**Wherefore**, plaintiff respectfully requests:

A. Compensatory damages as to all defendants;

B. Punitive damages as to defendants Blowes, Conard, Denofa, Dragon, Enriquez, Gage, Latorre, Lee, Marcellino, McDevitt, Miles, Miller, O'Malley, Singleton, Walsh, Williams, Wilson, and Doe(s);

C. Reasonable attorney's fees and costs as to all defendants;

D. Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial.

Jonathan H. Feinberg
I.D. No. 88227
KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
215-925-4400
215-925-5365 (fax)
jfeinberg@krlawphila.com

*Counsel for Plaintiff*

14